Good morning, Your Honors. My name is Jason Cerf from the Federal Defender Office in San Diego. I represent Mr. Stevens. I'd like to reserve approximately a minute for rebuttal. This Court should vacate and remand for resentencing in this case for no less than three reasons. First, pursuant to McBell, we believe that the Court violated 3553c2, but it failed to state for the record two things. One, the reasons why it imposed the 21-month sentence, why that was reasonable or required. And two, why the guideline range of three to nine months wouldn't have done, for example, the job of deterrence as the Court claims was one of the reasons for the imposition sentence. Secondly, we're asking the Court to vacate and remand based on the District Court's failure to calculate a guideline range in this case, which we think is fatal. And then finally, we believe the sentence that was imposed was unreasonable pursuant to 3553a. MS. STEPHENS Well, I'm looking at the whole thing across the way. Tell me from a judge's perspective, the way that, you know, I have to say the way that I look at this is that this judge essentially really wanted your client to be successful. And really, you know, I mean, your client was messing up, messed up, brings his mother in, you know, we pull out the children card, you know, and all of that. And the judge is, you know, the comments of I'm talking to you man-to-man, I want, you know, this is what you've got to do, I'll give you another chance, you know. And it's really trying to work with your client, but says, you know, if you don't do it at this point, you know, I will give you another chance, your client's already violent, I will give you another chance, but if you don't do it, you know, I'm going to lower the hammer on you. MR. MCGREGOR Well, I don't know how much the Court really wanted him to succeed. And I think this goes MS. STEPHENS Well, but why would you send someone back out if their mother comes in, you know, think about your children, you know, do all of these things. It's not, you know, why, you know, I mean, I've been in this position and you do want someone to be successful there, but you also know that it's really important when they're in that situation that they do everything that probation requires, that when people don't show up for tests, it probably means that they're using drugs, because that's the reason that you don't show up and give a test. If you want them to stay in an area, you don't want them going to Mexico, you want them where you can watch over them, they can, you know, have the supervision that they need, and, you know, your client won't do it. You know, then you're left with at a point where, you know, I've tried to work with you, I want you to be with your children, I want you to be law-abiding, but you won't, you know, I can lead you, take you to water, but I can't make you drink. You know, now I need to deter you, now I need to protect society, now I need to, you know, all I can do is lock you up at this point to keep you from using drugs. MR. MCGREGOR Are you ready to start your sentence? MR. MCGREGOR A couple of... MR. MCGREGOR So to speak. MR. MCGREGOR A couple of... MS. MCGREGOR Yeah, I mean, I guess, you know, I really see here a judge that wanted your client to be successful, really wanted to work with your client, but, you know, sometimes a two-by-four doesn't work. MR. MCGREGOR Well, I have a couple of responses, and I think first, I don't know how much Judge Burns really wanted him to succeed, and I think this goes to the reasonableness part of the sentence. The court never discussed options other than an imprisonment term, such as a halfway house, maybe an inpatient rehabilitation program. The judge, assuming there were drug problems at the last sentencing, which I would note, the court dismissed the two allegations regarding the stalls and the positives. There were admissions at the first supervised release hearing, but I think using those as a basis here to impose sentence would be a double counting or a double jeopardy style issue. But I don't know if Judge Burns really wanted him to succeed, and I think 3553A says, look, you can use all these alternative options other than a prison term to help somebody. MS. MCGREGOR Do you really think that a judge wants someone to go out and commit crimes, not be with their family, when you send them back out and give them another chance after the mother comes in? MR. KREGER Well, under 3553A, the court certainly has to consider these alternatives, and the court didn't do that in this case. So I don't know if Judge Burns really wanted him to succeed. I think what the issue boiled down to for Judge Burns when it imposed the 21-month sentence was a matter of his word, and that's what he said first thing out of the gate in this case was, look, I'm a person of my word. I'm a person of my word. I have to give you the 21 months. That's what I said I was going to give you if you ever came back. And that was without any analysis of the 3553A factors, which we think is a problem here. Assuming the court actually reviewed the 3553A factors as it claimed at the time of sentencing, the judge did so in an erroneous manner. The judge says, I'm considering these factors as if it were the first instance of sentencing, which would mean he considered punishment. And that's exactly what he said towards the end of the proceeding when he said, look, you need the 21 months for deterrence, but he also sentenced on an impermissible basis when it said, I mean, you have to respect the law. That means it's punishment. And this is exactly what McBell talked about. When a court imposes a sentence for purposes of promoting respect for the law, it's the equivalent of punishment. And that's impermissible in a supervised release context. And that's exactly what occurred here. So not only did the court, I don't think, want him to succeed, it considered bases it shouldn't have when it imposed a sentence and failed to really consider, I think, the factors that were required here. I'm assuming Your Honor is correct that there is a big drug problem. The best way to deal with it, according to the guidelines and some of the commentaries, is to talk to the individual about potentially getting rehabilitation. And there are – I've had cases and there are plenty of cases I'm sure the court has seen and is aware of where courts do sentence people to terms in inpatient rehabilitation facilities. What about – is he getting drug treatment in the facility? Is that part of the treatment when he goes – a regimen when he goes into the kind of incarceration he's got? He's got 21 months. Right. And I think he's already served longer than the nine months at the high end. I would note that now and submit that this isn't a case that should be waiting for Zavala or McCarty to come out. I don't know if he's getting drug treatment. I can tell the court this, that the 500-hour drug program that we would encourage our clients to do in cases like this isn't available to somebody who does – Well, they're allegedly not using drugs, but I know that that's sort of – I read the stories about people using drugs in incarceration, so I don't know whether, you know, I mean – I don't think he's – hopefully he's not using in custody. I certainly – No, that's one of the things – He shouldn't be going out by the record, anyway. Right. But the sentence isn't long enough in this case for him to take advantage of the 500-hour drug program, which is the problem. So even assuming that were an option in custody, it wouldn't justify the 21-month sentence or make it a reasonable one in this case. So it sounds like what the judge – it reads as if what the judge was imposing was tough law and saying, I gave you a chance. You've got to learn that when you make a commitment, there are consequences. So taking that as one aspect of this, one of the things that did bother me as I read the transcript was this evolution through what the judge was really taking into account. He did, in fact, ultimately say because of the Stevens cap that he couldn't look at the prior drug test that went positive, although at the beginning of his discussion, he seemed to think that he could. So at the end, what it boils down to is he say, I am drawing an inference from the refusal, notwithstanding that the defendant has said, in fact, in court that the reason he didn't call is in custody, I guess, and he was about to go into custody, so he was moot. And he says, I reject that. I adopt the presumption that Judge Callahan mentioned, which is that if you don't take a drug test, you presume the street presumption is you're going to test positive. But there was an objection made saying that we've not had a hearing on that, Your Honor. There's no finding by preponderance of the evidence after able to make proof. What's the argument? How does that play into our analysis? Well, I fortunately did make the objection to preserve it, and I think it factors into the 3553A analysis of what the court impermissibly considered with regard to the nature and circumstances of the offense conduct here leading up to the OSC to be issued by probation. And if the court's making a finding that, based on the allegations that he tested positive and stalled, which he couldn't then consider later once he had dismissed them, I think he's now found a basis that's an impermissible basis. And a lot of the cases say this constitutional infirmity in a sentence if the court fails to adequately consider all the factors of 3553A. Well, after you objected, though, didn't the court say it had considered all the 3553A factors and found that deterrence was the most important consideration in Stephen's case? It did reference 3553A, but the trouble is Judge Burns said he considered it as if it were the first instance, such as a sentencing on an underlying offense, not for a violation of supervised release, which means he was considering, in our opinion, 3553A as a whole rather than 3553A through the lens of 3583, which precludes him from considering things such as punishment, which is exactly what he said one of his reasons was for the imposition of sentence. It wasn't just to deter Mr. Stephens. And in the record, I believe it's page 86 of my excerpt, he says, to deter and to promote respect for the law. And this is exactly what this court in McBill said was impermissible. So while the court may have relied on deterrence, the trouble is there are additional factors that the court relied on impermissibly, one being punishment. The second, as Garner's pointed out, is this jump he makes with regard to the use or alleged use of drugs and the reason why he might have not tested. And there was no evidence presented by probation or by the government to the contrary. So I think that's an impermissible factor and certainly would go to the reasonableness, or in this case, the unreasonableness of a sentence. Is this Judge Burns' deceased, or is it a different? No, this is, no. Oh, okay. Because there's one, I think, that spells it differently or something. No, that's B-Y-R-N-D-S. Okay. And he was in the Central District. So I think the other issue the court needs to consider here is the omission under 3553C when the court said, assuming Arndt is correct, that, look, he had these proper bases for imposing the 21-month sentence. Well, he never explained, assuming he said that's why 21 months was needed, he never explained why the 3- to 9-month range, which he never even discussed, never even mentioned Chapter 7, the policy statements, which I think goes to undermine his claim that he considered 3553A when we know he never talked about the guidelines. But the probation officer wanted him to get less, and so did the government, right? Everyone recommended 6 months. So that was discussed. Right. I mean, it was before him. But in Mix, this court talked about an adoption of a PSR. I think the same thing happened in Cardi, which the court had touched on earlier. This isn't a case where he said, look, I'm expressly adopting the findings or the documents and calculations submitted by probation. There was no express adoption. Well, he rejected it. Correct, obviously, because he went with 21 months. The issue is whether he even knew what the range was, considering he wanted to impose 24 months and the LID was 21. I don't think we can presume that he knew exactly what guidelines or ---- But wasn't there discussion at sentencing that the government wanted less and the probation wanted less, but the judge said, no, that's not enough for you? Correct. But the judge didn't even calculate the guidelines. So the fact that the judge didn't calculate the guidelines we believe is a fatal error. But what the court didn't do was ---- I think we have the argument. You're over time. So why don't you ---- I'll give you a minute for a rebuttal and get focused on what we haven't already heard in the briefs. Good morning to the court. Carlos Arguello, assistant United States attorney on behalf of the United States. The defendant in this case, Mr. Stevens, was before the court for his second violation of supervised release. And it was clear from the record that at the original sentence, the court did give him break at the outset. But he also gave him a warning. And then he ---- It sounds like at the second hearing that's exactly what he determined he was going to do. Right. He basically gave ---- Regardless. Well, that's where you look at the record. He did basically give the defendant, give the appellant a warning, saying, you've got to do what I say. That's quite clear. I mean, the transcript is absolutely clear. I'm a man of my word. You violated it. I don't believe, first of all, and as I mentioned to counsel, I'd like you to address it, this issue of how those prior tests played in. They were in and then they were ostensibly out. So what the judge was careful to do was say, well, I'm relying only on my inference that your refusal to take the drug test, notwithstanding there was a logical explanation for why you didn't make the call. And I'm going to infer that you were dirty. And, therefore, not only were you not violating the ---- it wasn't just a question of your not making the call, which the judge on the record says that wouldn't be very ---- that wouldn't justify 21 months. But I'm going to make a factual finding. And, in fact, you were dirty at the time, and that's why you didn't make the call. So what do we do with that? Well, there's a couple ways to approach that, Your Honor. First, the court did state on the record, at page 85 of the excerpt of records, actually it was in response to Mr. Serr's objection to the court, considering the two allegations that were dismissed per the Stevens case. But the court did say at page 85 that the court was not going to rely on the dismissed positive test. And he said that clearly at 85. He says it, and let's assume we take that at face value. But then what he does is make an inference of fact, a finding, to say, well, I'm not going to rely on that. What I'm going to do is then assume that the one that didn't happen, and I'm going to infer from that you would have tested positive. Right. But the inference wasn't just in a vacuum, Your Honor. In this case, in considering the 3553 factors that he could consider through 3583C, the court was entitled to look at the history and the characteristics of the defendant, of Mr. Stevens. And what he did see was, even though he wasn't punishing him for the basis for the first violation, the court was able to consider as part of his history and characteristics that in the previous violation, he had admitted that he had missed 12 tests. That can support one of the facts that he can consider in making his conclusion. He could also consider that he tested positive for marijuana in the past, that in this case his explanation that he failed to test simply because he knew he was coming in was simply not credible. I'm just trying to sort this out. I'm sorry. I do understand what went on here, but there is an objection that says, Your Honor, you are making a finding of fact without having any kind of evidentiary hearing on it, and you haven't established by what standard of proof you're trying. You're just saying you can do it. And is that okay on sentencing for the judge to, as this judge clearly did, infer that Mr. Figueroa or Stevens was not taking the test notwithstanding he had an explanation? Notwithstanding that the government and the probation office didn't appear to be of that concern? He wasn't charged with being dirty? I mean, how do we treat that kind of record? Well, the court was certainly entitled to make this inference because it heard directly from the defendant, from Mr. Stevens in court, and had an opportunity to observe his demeanor, to evaluate his credibility, and also to consider his track record in this case, Your Honor. Also consider the fact that after the first violation, after the defendant was released from custody after getting the three months on the supervised release violation on August 24th of 2005, on September 30th, the next month of 2005, the probation office filed its first petition. And then a month later, October 31st, the probation department filed its amended petition. So within one to two months, the defendant is back here. And it was brought up whether or not the court really cared about Mr. Stevens succeeding, but it was apparent to the court that Mr. Stevens certainly wasn't working hard enough to try to succeed on supervised release because he came back so quickly. And there was a council mentions, I think, in his – well, the record is clear that there were some equities considered, but there wasn't anything left to consider, that there weren't many great equities because he hadn't really done much other than simply violate the terms of supervised release, albeit some of the allegations were dismissed and the court was not considering that. So that's what we have then is the record ostensibly of he's back in front of the judge because he failed to call after crossing the border, right, and failed to show up for a drug test, which was moot, largely because he was already going to be in custody. Right. But the court could also consider part of the equities in this case. He heard – the court indicated he heard it the first time at sentencing, the original sentencing. He heard it again at the time of supervised – the first supervised release violation, and he heard it yet a third time at the second supervised release violation of how important to the defendant – to Mr. Stevens that his family was, that the fact that he was a single father with custody of his children, that his mother was working, was going to great lengths to support not only the defendant. I understand that he looked at those factors, but I'm still trying to understand. The stated reason was that he inferred that several times, he inferred that Mr. Stevens was using drugs. That's why he didn't make the call. He made a finding of fact and a fact, and the deterrence is not – looking at it favorably to the government's argument is that that was one of the things that he wanted to deter, but he was basing it on a finding of fact and a fact that the guy was dirty, and then we're just supposed to accept that. Well, in looking at the history and characteristics, Your Honor, the court was in a position to – Once a drug, he always a drug. Well, not necessarily, but why was he before the court the first time for the violation? Well, if I were standing where you are, the argument that I would make is why you don't take a test, why it's not minor, is your past history, as opposed to when you decide whether something is serious – whether it's a minor violation of probation, whether it's a serious violation of probation, that you take into consideration what someone's done previously. Not once a druggie, always a druggie, but not taking your test, not going to Mexico when you're not supposed to go to Mexico, why that's not a minor violation is because of all the chances he got previously and everything he's done. That's what I would argue. Do you adopt that argument? I'd give the rest of my two minutes to Her Honor. But also, Your Honor, in this case, the court saw the breach of trust. The court saw that he had gave the defendant a warning and said at the first violation of supervised release, this is it. Don't fail me. I'm giving you another opportunity. Gave him the low end of the guideline range and said, I'm impressed by the fact that your mother's here and the fact that she's helping. Because then what I would say to you is you said three to nine was fine for the government back then, but now you're saying that 21's fine now. So pick a position and stick with it. Well, the position is that the court was entitled to – that it was within the bounds of reason, and certainly the court looked at it a different way, and the question is, was that the manner in which the court looked at it? Was it reasonable under the circumstances? And the issue is, did he specify specific reasons for going outside? What about the 3583 argument that it was impermissible to use punishment on a supervised release? Calculate. It's very subtle. As one of the cases has said, I'm not sure if it was McBell or the Mix case, that the policy statements make it clear that the court can, at the time of supervised release or at the time of sentencing on the supervised release revocation, can impose a sanction for breach of trust. And in this case, a sanction for the defendant making a promise that at the first supervised release sentencing, that he was going to follow exactly what the court said. And there's a subtle distinction between that and actual punishment. So one might say punishment, and other may characterize this as government is supporting, that it was a sanction for breach of – Tomato, huh? Well, he's able under the policy statements or the policy guidelines to – policy statements to consider that. All right. Thank you very much. Thank you, Your Honor. I won't go for my minute, I promise. Just a couple of brief responses. Obviously, the court's aware it's limited only to the record to assess the reasonableness of the basis for imposition of sentence. And looking at the record, when Judge Burns talks about it's reasonable for him to conclude this, that he would have tested 30, which is why he didn't call, the government says he relied on the nature and history and characteristics of the individual. But that's not exactly what the record indicates. It says it's reasonable for me to conclude irrespective of any other evidence that's out there. And that's on page 83 of the record. So it seems to indicate when he says that, he doesn't consider the remainder of the history or characteristics of Mr. Stevens in drawing his inference or his conclusion. It's based solely on the mere fact that he didn't call and stall according to his admission. So while I think it might have been possible, it's clear here that Judge Burns didn't consider the history and characteristics. Finally, I would just note that the government says he sanctioned him for a breach of trust. The trouble is Judge Burns here never referenced the words breach of trust, never said that, never referenced Chapter 7, never talked about the policy considerations in Chapter 7, which obviously indicates he didn't consider much of 3553A. And with regard to the history and characteristics, while he did say there were sympathetic equities, Judge Burns did say towards the end that I'm not going to fall for them again. I've already fallen for them twice, which seems to indicate to me that he's not considering them. He acknowledges they're there, but he refuses to consider them again and just tosses them aside, which I think is even worse than failing to consider them at all because he's admitted to sympathetic equities. Thank you, Your Honor. Thank you, counsel. We appreciate the argument. Very good on both sides. The case argued is submitted.
judges: Gibson , Fisher, Callahan